**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 34817**

| | |
|---|---|
| CHRISTIANNE VREEKEN, <br><br>     Plaintiff, <br><br> v. <br><br> LOCKWOOD ENGINEERING, B.V., a Netherlands corporation; GERBROEDERS MEIJER BELEGGING, B.V., a Netherlands corporation; JAN VREEKEN, an individual, and THOMAS R. GOLD, an individual, <br><br>     Defendants. <br> ------------------------------------------------------------- <br> THOMAS R. GOLD, an individual, <br><br>     Cross Claimant-Respondent, <br><br> v. <br><br> LOCKWOOD ENGINEERING, B.V., a Netherlands corporation, GERBROEDERS MEIJER BELEGGING, B.V., a Netherlands corporation, a/k/a GERBROEDERS MEIJER BELEGGING, B.V., and JAN VREEKEN, an individual, <br><br>     Cross Defendants-Appellants. <br> ------------------------------------------------------------- <br> THOMAS R. GOLD, an individual, RICHARD L. GOLD, an individual, and TOMAC PACKAGING, INC., a Massachusetts corporation, <br><br>     Cross Claimants-Third Party <br>     Plaintiffs-Respondents, <br><br> v. <br><br> LOCKWOOD PACKING CORPORATION, a Delaware corporation ("LPC"), and LOCKWOOD PACKING CORPORATION IDAHO, an Idaho corporation ("LPC Idaho"), <br><br>     Third Party Defendants-Appellants. | Boise, May 2009 Term <br><br> 2009 Opinion No. 127 <br><br> Filed: October 19, 2009 <br><br> Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

Termination of joint venture, <u>affirmed</u> in part, <u>reversed</u> in part, and <u>remanded.</u>

1

Manwaring Law Office, Idaho Falls, for appellants. Judy Lea Geier argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondents. Charles A. Homer argued.

_____

BURDICK, Justice

This action involves a dispute over the parties' respective rights upon termination of a joint venture. Appellants Jan Vreeken (Vreeken); Gergbroeders Meijer Belegging, B.V., a Netherlands corporation (Gergbroeders); Lockwood Engineering, B.V., a Netherlands corporation (Lockwood); and Third-Party Appellants Lockwood Packaging Corporation (LP) and Lockwood Packaging Corporation Idaho (LPI) file this appeal on several grounds. We hold Vreeken, Gergbroeders, and Lockwood waived the argument that they should have been summonsed and subpoenaed in their native language of Dutch in accordance with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965, and that the district court was not required to *sua sponte* appoint a certified Dutch interpreter for Vreeken's depositions. We affirm the district court's award of summary judgment against LP and LPI's counterclaims for misrepresentation and breach of the covenant of good faith and fair dealing. We also affirm the district court's award of summary judgment in favor of Respondent Thomas Gold and Third-Party Respondents Richard Gold and Tomac Packaging, Inc. on their cross-claim for breach of contract. We reverse the district court's award of summary judgment on the Gold's cross-claim for indemnification, and remand the case for a determination of the amount of damages the Golds sustained from Vreeken's interference with the disposition of the assets intended to secure the Golds' releases from the two bank loans.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a complex factual and procedural history. Appellant Vreeken is a citizen of the Netherlands. Vreeken owns Appellant Gergbroeders, a Netherlands corporation. Gergbroeders is the parent corporation of Appellant Lockwood, also a Netherlands corporation. Third-Party Respondent Richard Gold and Respondent Thomas Gold (the Golds) are father and son respectively. The Golds own Third-Party Respondent Tomac Packaging, Inc., a Massachusetts corporation.

In 1995, Lockwood, represented by Vreeken, and Tomac, represented by the Golds, entered into an agreement to form a joint venture selling produce packaging equipment and machinery, manufactured by Lockwood, in the United States and internationally. In furtherance of the joint venture, LP was formed. LP was the master distributor of Lockwood equipment and machinery in the United States. Thomas Gold managed LP for the parties. Initially, LP was owned 50% by Lockwood and 50% by Tomac; however, Tomac's 50% interest was later transferred to Thomas Gold.

In 1997, the parties formed LPI as a wholly-owned subsidiary of LP. LPI primarily manufactured and distributed bags and other packaging materials for the potato industry. LPI also distributed Lockwood equipment in the Northwestern United States.

LPI obtained various loans during the course of its business operations. In 1997, LPI entered into loan transactions with the Bank of Idaho totaling $800,500. Through a succession of guarantee agreements, Thomas Gold, Vreeken, Lockwood, LP, and LPI became jointly and severally liable for LPI's obligations to the Bank of Idaho. That same year, LPI also obtained a loan from the Eastern Idaho Economic Development Council (EIEDC). The obligation to repay this loan was jointly and severally guaranteed by Thomas Gold, Vreeken, Lockwood, LP, and LPI. LPI later defaulted under this loan and EIEDC obtained a judgment in the amount of $253,331.95 against the EIEDC guarantors. In 2004, Richard Gold purchased EIEDC's interest under the loan, which included the right to collect from the EIEDC guarantors.

Prior to forming the joint venture, Tomac had entered into a loan transaction with Citizens Bank of Massachusetts. Richard Gold personally guaranteed Tomac's obligations under the loan and pledged certain marketable securities as collateral.

Later in 1997, LP and LPI began experiencing accounting problems. In March of 1998, Vreeken and Jan Postema, the Treasurer of LP and the Chief Financial Officer of Lockwood, visited the LP offices in Woburn, Massachusetts. During their visit, Vreeken and Postema were given access to LP's business and financial records as well as some of LPI's records located in the Woburn offices. A few months later in August of 1999, Jerry Ceuppens, Vice President in charge of Lockwood's North American activities, and Jack Schipper, Assistant Controller of Lockwood, also visited the Woburn offices and were given access to LP and LPI's financial records. As a result of their visit, Ceuppens and Schipper wrote a letter to Thomas Gold and Vreeken detailing the problems with LP's accounting, sales, administration, and management.

By the end of 1999, the relationship between the parties had broken down. The parties began to negotiate a plan of reorganization whereby Vreeken would buy out the Golds' interests in the joint venture. On May 12, 2000, the parties entered into a settlement agreement entitled "Memorandum of Understanding" (MOU). Under the MOU, the Golds transferred their interests in LP and LPI to Vreeken. In consideration of the transfer, LP and LPI were to use their best efforts to release the Golds from their personal guarantees under the Bank of Idaho, EIEDC, and Citizens Bank loans. If necessary to effect such releases, Vreeken agreed to personally guarantee these loans. In addition, Lockwood, LP, and LPI agreed to pay Richard Gold $100,000 and Thomas Gold $450,000 under various payout notes. These amounts were to accelerate and become fully due after non-payment and receipt of a ten-day default letter, which undisputedly occurred in this case. The payout notes were to be secured by the assets of LP and LPI, with these security interests being subordinate to all current bank loans, all security positions on record at the time of the MOU, and any future refinancing of such bank loans. The parties mutually agreed to release all claims against each other, except for claims grounded in fraud or claims arising out of the MOU. The MOU contained an integration clause, which stated that the parties did not make any representations or warranties except those specifically contained therein.

On June 26, 2000, Lockwood filed UCC financing statements in the State of Idaho against LP and LPI's assets. These statements were filed by Vreeken's counsel and signed by Vreeken himself. Despite the fact that the MOU provided that the Golds' security interests in LP and LPI's assets were to be subordinate only to the banks' security interests, Lockwood filed its UCC financing statements before the Golds filed theirs. This hindered the Golds' ability to access their collateral under the MOU and to enforce their claims regarding the payout notes.

On April 27, 2001, the Bank of Idaho filed a complaint against the guarantors of the LPI loan seeking to enforce and satisfy the loan. On June 26, 2001, Thomas Gold filed an Answer, Cross-claim, and Third-Party Complaint, under which Richard Gold and Tomac were joined as third-party plaintiffs and LP and LPI were named as third-party defendants. On November 2, 2001, LP and LPI filed an answer to the Bank of Idaho's complaint. In their answer, LP and LPI made counterclaims against the Golds for misrepresentation and breach of the implied covenant of good faith and fair dealing.

Sometime prior to October 12, 2001, the Bank of Idaho agreed to accept $617,870.59 from Christianne Vreeken (Christianne), Vreeken's daughter, in full satisfaction of LPI's loan. Vreeken provided the funds Christianne used to pay off the loan. On October 21, 2001, the Bank of Idaho assigned its interests in the LPI loan to Christianne in consideration of her payment of $617,870.50. These interests included the Bank of Idaho's right to enforce the loan against the relevant guarantors and the bank's security interests in LPI's assets.

As a result of the assignment, Christianne was substituted as plaintiff for the Bank of Idaho. The respondents attempted to take Christianne's deposition five different times. On May 3, 2004, the district court ordered Christianne to personally appear for the taking of her deposition, but again, she did not appear. As a result, the respondents sought sanctions against Christianne. On December 1, 2004, the district court dismissed Christianne's complaint with prejudice against all named defendants as a sanction for her repeated failure to appear.

On February 14, 2005, the respondents filed a motion for summary judgment seeking dismissal of all claims brought against them; a declaratory judgment regarding the performance of, and the amount due, under the MOU; entry of a monetary judgment against Lockwood, LP, and LPI; and a writ of possession allowing the Golds to obtain possession of LP and LPI's assets in order to foreclose their security interests. On May 3, 2005, the district court issued its opinion on the respondents' first motion for summary judgment. The district court dismissed LP and LPI's counterclaim for misrepresentation. As for the remainder of LP and LPI's counterclaims, including their counterclaim for breach of the covenant of good faith and fair dealing, the district court dismissed these claims under section 2(h) of the MOU—the release of claims provision. In addition, the district court granted summary judgment on the respondents' cross-claim for breach of contract. The district court found that: (1) Vreeken, Lockwood, LP, and LPI were in default under section 2(a) of the MOU and, therefore, liable on the payout note to Richard Gold in the principal amount of $100,000 plus interest and liable on the payout note to Thomas Gold in the principal amount of $450,000 plus interest. The district court found that these obligations were secured by the assets of LP and LPI, and that LP and LPI were required to make annual payments to Thomas Gold in an amount equal to 25% of their respective net profits until the aggregate amount of such payments reaches $100,000. The district court also found that, pursuant to section 2(c) of the MOU, any damages the Golds incurred as a result of Vreeken, Lockwood, LP, and LPI's failure to obtain releases of the loans specified therein were secured by

the assets of LP and LPI. The district court determined that Thomas Gold possessed a security interest in LP and LPI's assets in the amount of $253,331.95 plus interest, but that issues of fact precluded determination of the exact amount of Richard Gold's security interest in the assets.

Both parties moved for reconsideration. On September 2, 2005, the district court issued its opinion, clarifying that, pursuant to section 2(c) of the MOU, any damages incurred by the Golds as a result of Lockwood, LP, and LPI's failure to obtain the releases of their personal obligations under the loans were secured by the assets of LP and LPI. The district court ~~also~~ held that as a result of Vreeken, Lockwood, LP, and LPI's failure to obtain releases of the Citizens Bank and EIEDC loans, Richard Gold possessed a security interest in LP and LPI's assets in the amount of $270,435.53 plus interest for damages. Finally, the district court ordered Vreeken to effectuate a personal guarantee for the Citizens Bank loan.

On August 21, 2006, the respondents filed another motion for summary judgment, claiming Vreeken was personally liable on the payout notes, Vreeken was required to effectuate a personal guarantee on the EIEDC loan, and Vreeken was required to indemnify the Golds on the Citizens Bank and EIEDC loans. The respondents also filed a separate motion for entry of summary judgment, requesting that the district court enter summary judgment pursuant to its prior opinions on the respondents' first motion for summary judgment and the parties' motions for reconsideration. On October 20, 2006, the district court granted in part and denied in part the respondents' second motion for summary judgment. The district court found, among other things, that: (1) genuine issues of material fact existed as to whether Vreeken intentionally interfered with the obligations of LP and LPI under the MOU by filing the UCC statements, (2) the respondents had failed to demonstrate sufficient evidence that Vreeken was personally liable on the payout notes, (3) Vreeken was required to effectuate a personal guarantee on the EIEDC loan as well, and (4) Vreeken was obligated to indemnify the Golds on the Citizens Bank and EIEDC loans.

The remaining issues were tried before the district court. On June 25, 2007, the district court issued its opinion, finding Vreeken joint and severally liable on the payout notes as a result of his wrongful conduct. This appeal was timely filed.

## II. ANALYSIS

The appellants raise several issues on appeal. First, Vreeken, Gergbroeders, and Lockwood argue that the district court did not have personal jurisdiction over them because they

6

were not summonsed nor subpoenaed in their native language of Dutch in accordance with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965. Vreeken also argues that the district court erred by failing to *sua sponte* appoint a certified Dutch interpreter for his depositions.

The appellants also appeal from the district court's awards of summary judgment. LP and LPI argue that the district court erred by granting partial summary judgment against their counterclaims for misrepresentation and breach of the covenant of good faith and fair dealing. The appellants collectively argue that the district court erred in granting partial summary judgment in favor of the respondents' cross-claim for breach of contract. Vreeken argues that the district court erred in granting partial summary judgment on the respondents' cross-claim for indemnification.

Finally, Vreeken appeals from the district court's final judgment, whereby the court found Vreeken personally liable on the payout notes as a result of his wrongful conduct. Vreeken argues that the district court erred by failing to address his claim that the Golds breached their fiduciary duty to him, which Vreeken asserts was added through a general motion to amend the pleadings to conform to the evidence at the close of trial. In addition, Vreeken assigns error to certain evidentiary rulings made by the district court, arguing the court abused its discretion by admitting hearsay testimony from Thomas Gold regarding his telephone conversation with Christianne, and by excluding certain documentary evidence. Lastly, Vreeken argues that some of the district court's findings of fact, namely that Vreeken committed wrongful conduct, Vreeken made capital contributions to LPI by way of equipment, and the Bank of Idaho's assignment to Christianne was void, are not supported by substantial and competent evidence. Each issue will be discussed in turn.

## A. Language Issues

### 1. Under I.R.C.P. 12(g)(1), Vreeken, Gergbroeders, and Lockwood waived the affirmative defense that they were required to be summonsed and subpoenaed in their native language of Dutch.

First, Vreeken, Gergbroeders, and Lockwood argue that the district court lacked personal jurisdiction over them because they were not summonsed nor subpoenaed in their native language of Dutch in accordance with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965 (Convention). However, we find that even if the parties should have been served with a complaint in Dutch,

they waived this argument. Although Vreeken, Gergbroeders, and Lockwood argue that the district court lacked personal jurisdiction over them because they were not summonsed nor subpoenaed in accordance with the Convention, these parties are actually challenging the sufficiency of the process with which they were served.[1] The defense of insufficiency of process challenges the contents of the summons. *Heise v. Olympus Optical Co.*, 111 F.R.D. 1, 5 (N.D. Ind. 1986). Whether or not the summons and subpoenas in this case should have been written in Dutch is an issue that goes to the contents of the documents and, accordingly, questions the sufficiency of the process.[2] Furthermore, the Fifth Circuit Court of Appeals has implicitly found that failure to comply with the Convention does not affect a court's jurisdiction. *See Nuovo Pignone, Spa v. Storman Asia M/V*, 310 F.3d 374, 385 (5th Cir. 2002) (Fifth Circuit reversing the district court's decision that service of process by mail was permissible under the Convention, but remanding the case to allow Nuovo Pignone a reasonable time to effect service properly). Idaho Rule of Civil Procedure 12(b)(4), which governs the defense of insufficiency of process, requires that the defense be asserted by motion. Idaho Rule of Civil Procedure 12(g)(1) further requires that the motion be made prior to filing a responsive pleading and prior to filing any other motion, except a motion for an extension of time to answer or otherwise appear or a motion under Rule 40(d)(1) or (2), or else the defense of insufficiency of process is waived. Because Vreeken, Gergbroeders, and Lockwood waited to raise the defense of insufficiency of process until appeal, they waived the defense under I.R.C.P. 12(g)(1). Therefore, we need not decide whether the Convention applies in this case.

    2. The district court was not required to *sua sponte* appoint a certified Dutch interpreter for Vreeken's depositions.

---

[1] In their cross-claim and amended cross-claim, the respondents asserted the district court had personal jurisdiction over the parties because: (1) Vreeken owned real property in Idaho, consisting of a residential dwelling house, and that during all times relevant to the action, Vreeken was an officer, director, or shareholder of business entities that conducted business within Idaho as defined under I.C. § 5-514(a); and (2) Gergbroeders and Lockwood conducted business in Idaho as defined under I.C. § 5-514(a). Vreeken, Gergbroeders, and Lockwood do not challenge the court's jurisdiction on these grounds.

[2] There is also an argument that Vreeken, Gergbroeders, and Lockwood are asserting insufficiency of service of process. "The defense of insufficiency of process differs from insufficiency of service of process: the former challenges the content of a summons; the latter challenges the manner or method of service." *Heise v. Olympus Optical Co.*, 111 F.R.D. 1, 5 (N.D. Ind. 1986). By arguing that they should have been served in Dutch, the parties may be challenging the method in which they were served. However, it seems more likely that they are challenging insufficiency of process. Regardless, Vreeken, Gergbroeders, and Lockwood have waived both defenses under I.R.C.P. 12(g)(1).

In addition, Vreeken argues that he was denied the right to have a certified Dutch interpreter present during his depositions.[3] Although Vreeken admits he did not request an interpreter, Vreeken argues the district court was required to provide him one under Idaho Court Administrative Rule 52(a). That rule states in pertinent part:

> It is the policy of the Supreme Court and the intent of these rules to secure the rights, constitutional and otherwise, of persons who, because of a non-English-speaking cultural background or physical impairment, are unable to understand or communicate adequately in the English language when they appear in the courts or are involved in court proceedings.

I.C.A.R. 52(a). Vreeken argues the mandatory directive of this rule is that the court must *sua sponte* appoint an interpreter to any person unable to understand or communicate adequately in English in order to secure that person's rights. Vreeken argues that it is evident from his deposition transcripts that he had difficulties understanding legal terminology and legal consequences in English. Vreeken argues that these difficulties led to the district court misinterpreting his testimony, which prejudiced the appellants' position before the court on the respondents' motions for summary judgment.

Vreeken is correct that under I.C.A.R. 52(a), it is the policy of the Court to secure the rights of those who are unable to understand or communicate adequately in English due in part to language barriers. In fact, I.C.A.R. 52(d)(1) further provides that "an interpreter *shall* be appointed when an interpreter is requested or when the appointing authority determines that a principal party in interest or witness does not communicate in or understand the English language sufficiently to permit effective participation in a court proceeding." (Emphasis added). However, Vreeken did not request an interpreter for his depositions and the district court did not have occasion to determine whether Vreeken was in need of one before he was deposed. Therefore, contrary to Vreeken's assertion, the district court did not err in failing to *sua sponte* appoint him an interpreter for his depositions.

## B. The District Court's Awards of Summary Judgment

Next, the appellants appeal from the district court's awards of summary judgment. We affirm the district court's award of summary judgment against LP and LPI's counterclaims for misrepresentation and breach of the implied covenant of good faith and fair dealing, and the court's award of summary judgment in favor of the respondents' cross-claim for breach of

---

[3] A certified Dutch interpreter was present throughout the trial.

contract. However, we reverse the district court's award of summary judgment against Vreeken on the Golds' cross-claim for indemnification.

### 1. Standard of Review

When reviewing an order for summary judgment, this Court applies the same standard of review that was used by the trial court in ruling on the motion for summary judgment. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The burden is on the moving party to show that there are no genuine issues of material fact. *Cafferty v. Dep't of Transp., Div. of Motor Vehicle Servs.*, 144 Idaho 324, 327, 160 P.3d 763, 766 (2007). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Cristo*, 144 Idaho at 307, 160 P.3d at 746 (quoting *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002)).

When an action is tried before the court without a jury, which occurred in this case, "resolution of the possible conflict between the inferences is within the responsibilities of the trial court as fact finder." *Chapin v. Linden*, 144 Idaho 393, 396, 162 P.3d 772, 775 (2007). The trial judge is not constrained to draw inferences in favor of the non-moving party, but rather the judge is free to arrive at the most probable inferences to be drawn from the uncontroverted evidentiary facts, despite the possibility of conflicting inferences. *Id*.

### 2. The district court properly granted summary judgment against LP and LPI's counterclaim for misrepresentation.

LP and LPI argue the district court erred in granting partial summary judgment against their counterclaim for misrepresentation. In ruling on the motion, the district court limited its analysis to oral representations made by Thomas Gold, since Vreeken testified during his deposition that he only relied upon verbal information received from Thomas Gold. The district court went on to determine that LP and LPI had failed to establish that Thomas Gold made any oral misrepresentations, and, more importantly, that any reliance placed on these alleged misrepresentations could not have been justified. LP and LPI, however, argue there is evidence in the record demonstrating the Golds made affirmative misrepresentations to Vreeken concerning LP and LPI's operations, financial solvency, and customer base, and that Vreeken

10

justifiably relied on these misrepresentations. Accordingly, LP and LPI argue genuine issues of material fact remain as to their counterclaim for misrepresentation.

Pursuant to section 2(h) of the MOU, the parties agreed to release all claims against each other except for claims grounded in fraud or claims related to the MOU. Since LP and LPI's counterclaim for misrepresentation is grounded in fraud, this claim was not released under the settlement agreement. The MOU provides that all claims allowed under the agreement are governed by Massachusetts law. Thus, we must turn to Massachusetts law on misrepresentation.

To sustain a claim for fraudulent or negligent misrepresentation in Massachusetts, the plaintiff must show, at a minimum, that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002) (quoting *Danca v. Taunton Sav. Bank,* 429 N.E.2d 1129, 1133 (Mass. 1982)). Such reliance must be justified. *Masingill v. EMC Corp.*, 870 N.E.2d 81, 88 (Mass. 2007).

On appeal, LP and LPI argue there is evidence in the record showing that the Golds made affirmative misrepresentations to Vreeken concerning LP and LPI's operations, financial solvency, and customer base. In support of their argument, LP and LPI cite to various portions of the record, including correspondence, various documents, as well as excerpts from the deposition testimonies of Jan Vreeken, Melanie Harris, Lorna Schubert, and John Teti, but do not specify what misrepresentations were made. This same evidence was presented before the district court in support of the respondents' motions for summary judgment. Contrary to LP and LPI's assertion, these portions of the record do not address any representations made by the Golds concerning LP and LPI, much less misrepresentations. The only evidence of any misrepresentation is found in Vreeken's blanket assertion that he relied on Thomas Gold's oral representations about LP and LPI. However, Vreeken also testified that he was unable to recall what Thomas Gold said in these oral representations. Because LP and LPI failed to present evidence on this essential element of their claim, summary judgment was proper.

Furthermore, even if the Golds had misrepresented facts about LP and LPI, Vreeken could not have justifiably relied on any such representations. There is evidence in the record demonstrating that Vreeken was aware of the accounting issues with LP prior to entering into the MOU. On August 10, 1999, Ceuppens and Schipper sent Vreeken a management letter detailing

11

the significant management and accounting issues with LP.  A short time later, Vreeken sent Thomas Gold a memorandum demonstrating that he was fully aware of the accounting problems experienced by LP.  In this memorandum, Vreeken stated: "[LP's] administrative and financial organization is in shambles."  Vreeken also rejected Thomas Gold's valuation of LP in the memorandum, stating "it puzzles me how you arrived at the amounts to buy you out." Therefore, we affirm the district court's award of partial summary judgment against LP and LPI's counterclaim for misrepresentation.

3. <u>The district court properly granted summary judgment against LP and LPI's counterclaim for breach of the covenant of good faith and fair dealing.</u>

In addition, LP and LPI argue that the district court erred in granting partial summary judgment against their counterclaim for breach of the implied covenant of good faith and fair dealing. They assert that the Golds breached the covenant by conducting inaccurate inventory and accounting methods, which resulted in Vreeken paying an overvalued amount for the Golds' portion of LP and LPI under the MOU.  The district court determined that even if the Golds engaged in inaccurate inventory and accounting practices, this conduct occurred prior to the execution of the MOU and, therefore, was not subject to the implied covenant of good faith and fair dealing.

Under Massachusetts law, every contract "is subject to an implied covenant of good faith and fair dealing." *Anthony's Pier Four, Inc. v. HBC Assocs.,* 583 N.E.2d 806, 821 (Mass. 1991). This means "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Id.* at 820 (quoting *Drucker v. Roland Wm. Jutras Assocs.*, 348 N.E.2d 763, 765 (1976)). Because the MOU is governed by Massachusetts law, the parties are subject to the implied covenant of good faith and fair dealing.

We find the district court properly granted summary judgment against LP and LPI on their counterclaim for breach of the implied covenant of good faith and fair dealing.  Until the parties signed the MOU, their rights were not established under the agreement.  Thus, any alleged misconduct that occurred prior to the execution of the MOU was not subject to the implied covenant of good faith and fair dealing, as it would not "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.*  This includes the Golds' allegedly inaccurate inventory and accounting methods.  Therefore, we affirm the district court's award of partial summary judgment against LP and LPI on their counterclaim.

12

4. The district court properly granted summary judgment on the respondents' cross-claim for breach of contract.

The appellants collectively argue the district court erred in granting summary judgment on the respondents' cross-claim for breach of contract. The appellants admittedly failed to contest the respondents' motion for summary judgment regarding this claim but argue the record before the district court contained genuine issues of material fact surrounding the alleged breach of the MOU. Specifically, the appellants assert that the respondents' evidence contained inconsistencies, unexplained expenses, and unrelated charges. The appellants argue the district court should have searched the record to discover these genuine issues of material fact.

The respondents argue that because the appellants did not object to their motion for summary judgment, the appellants "are several years too late with their objection." Therefore, we must first determine whether the appellants may appeal the district court's award of summary judgment in the absence of an objection below. For purposes of summary judgment, the moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Sherer v. Pocatello Sch. Dist. No. 25*, 143 Idaho 486, 489, 148 P.3d 1232, 1235 (2006). Only then does the burden shift to the non-moving party to come forward with sufficient evidence to create a genuine issue of material fact. *Id.* When reviewing an order for summary judgment, we apply this same standard of review. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust,* 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Accordingly, the appellants are not precluded from appealing the district court's award of summary judgment just because they failed to object to the respondents' claim for breach of contract below.

However, contrary to the appellants' assertion, the district court was not required to search the record looking for evidence to create a genuine issue of material fact. In *Esser Electric v. Lost River Ballistics Technologies, Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008), this Court recently held that "the trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." Based on the evidence before the district court, we find the respondents met their burden of proving the absence of a genuine issue of material fact. Therefore, we affirm the district court's award of summary judgment on the respondents' breach of contract claim.

5. The district court erred by granting summary judgment on the Golds' cross-claim for indemnification.

13

Finally, Vreeken argues that the district court erred in granting summary judgment on the Golds' claim for indemnification. The district court determined that the drafters of the MOU intended for Vreeken to indemnify Richard Gold on the Citizens Bank loan and to indemnify Thomas Gold on the EIEDC loan. Vreeken asserts that the district court wrongly determined that the Golds had an unqualified right of indemnification, rather than a limited one.

As set forth above, the MOU is governed by Massachusetts law. The principal guide to contract interpretation under Massachusetts law is the contract itself. Where there is no ambiguity in the contract language, the contract must be enforced according to its terms. *Freelander v. G. & K. Realty Corp.,* 258 N.E.2d 786, 788 (Mass. 1970). In this case, the parties do not argue that the language under section 2(c) of the contract is ambiguous. Therefore, the Court must enforce section 2(c) in accordance with the express terms.

In Massachusetts, a right to indemnification may either be express or implied. *See Fall River Hous. Auth. v. H.V. Collins Co.*, 604 N.E.2d 1310, 1312-13 (Mass. 1992). An implied right to contractual indemnity is only recognized where there are "special factors" surrounding the contractual relationship that indicate an intention by one party to indemnify another in a particular situation. *Id.* at 1313.

Section 2(c) of the MOU states in pertinent part:

The Lockwood Entities *will use their best efforts to effect the release of: (i) [Thomas Gold] and [Richard Gold] from certain personal guarantees they have made with regard to the following loans and (ii) certain securities pledged by [Richard Gold] which is being held as collateral for the Citizen's Loan, as defined below. If necessary to effect such releases, Vreeken agrees to personally guarantee such loans.* If the Lockwood Entities fail to provide such release by the earlier of: (w) three (3) months after all audited financials for fiscal years 1999 and 2000 are completed or (x) March 1, 2001, then [the Golds] shall have the option of terminating this Agreement as provided in Section 11 hereof, *unless Vreeken shall expressly opt to indemnify [the Golds] from any damages they may incur as a result of such personal guarantees.* Until the earlier of: (y) the releases pursuant to this Section 2(c) are effected or (z) this Agreement is terminated as provided herein, any damage [the Golds] may incur as a result of such personal guarantees not being released shall be secured by the assets of [LP] and [LPI].

(Emphasis added). The loans listed in section 2(c) included the Citizen's Bank loan in the principal amount of $225,000, and the EIEDC loan in the principal amount of $262,500. There are only two other references to indemnity in the agreement. Under Section 1(c), the respondents agreed not to compete, directly or indirectly, with LP or LPI for a period of three years, unless "[the Golds] are not being indemnified by Vreeken with regard to their personal

14

guarantees *as specified in Section 2(c)*." (Emphasis added). The MOU also provides that "[t]he Lockwood entities *will* indemnify [the Golds] against suits from third parties." (Emphasis added).

Based on the plain language of section 2(c), and the other references to indemnification in the MOU, Vreeken is correct that the Golds do not have an unqualified right to indemnification for the Citizens Bank and EIEDC loans. Section 2(c) states that if Lockwood, LP, and LPI fail to release the Golds from their personal obligations under the loans, and Vreeken does not personally effectuate such releases, then the Golds have the option to terminate the contract unless Vreeken *expressly opts* to indemnify the Golds from any damages they may incur as a result of their personal guarantees. It is undisputed that Lockwood, LP, and LPI did not obtain the releases and that Vreeken was ordered to effectuate personal guarantees on the Citizens Bank and EIEDC loans; however, there is no evidence in the record that Vreeken expressly opted to indemnify the Golds. The district court found "[i]mplicit in the agreement to use best efforts [was] the undertaking that Vreeken and the Lockwood [E]ntities [would] hold the Golds harmless in the agreement." In other words, the district court found that an implied right to indemnification existed under the contract. This finding was in error as section 2(c) had already provided an express right to indemnification. The express right was subject to the condition that Vreeken elect to indemnify the Golds.

In essence, the district court awarded indemnification as an equitable remedy. "In order for the doctrine of equitable indemnity to apply, there must be some basis for tort liability against the proposed indemnitor." 41 Am. Jur. 2d *Indemnity* § 20 (2005). "[An] implied contractual indemnity between the indemnitor and the indemnitee can provide a basis for equitable indemnity." *Id.* Here, the district court erred in granting equitable indemnification for two reasons. First, there was no basis for tort liability in this case since the Golds did not have an implied contractual right to indemnification. In addition, the Golds had an adequate remedy at law. Lockwood, LP, and LPI's failure to use their "best efforts" to release the Golds from their obligations under the bank loans interfered with the Golds' rights under the contract. Their conduct was attributable to Vreeken as the individual in control of the entities. Thus, the Golds had an adequate remedy available to them under the contract for breach of the implied covenant of good faith and fair dealing. It is well-established that equitable remedies will not be allowed if adequate remedies are available at law. *Meikle v. Watson*, 138 Idaho 680, 683, 69 P.3d 100,

15

103 (2003). Therefore, we reverse the district court's award of summary judgment on the Golds' claim for indemnification. Because the issue of indemnification was not related to the issues presented at trial, we will consider Vreeken's arguments regarding the district court's judgment after trial before remanding the case.

## C. District Court's Judgment after Trial

Finally, Vreeken appeals from the district court's final judgment, under which the court found Vreeken personally liable on the payout notes as a result of his wrongful conduct. Vreeken argues: (1) the district court erred by failing to find the Golds breached their fiduciary duty to him, (2) the district court abused its discretion under certain evidentiary rulings, and (3) some of the district court's findings of fact are not supported by substantial and competent evidence. We affirm the district court's final judgment.

### 1. Breach of Fiduciary Duty

First, Vreeken argues the district court erred by failing to find that the Golds breached their fiduciary duty to him. Vreeken argues there was evidence produced at trial that demonstrated that the Golds breached their fiduciary duty to Vreeken, causing him to incur over $2,000,000 in monetary damages and to lose critical security interests. Vreeken claims that his counsel made a motion to amend the pleadings to conform to the evidence at the close of trial, which included evidence of breach of fiduciary duty, and also argues the district court granted this motion. Accordingly, Vreeken assigns as error the district court's failure to rule on his claim for breach of fiduciary duty.

A motion to amend the pleadings to conform to the evidence is governed by I.R.C.P. 15(b). The rule provides, *inter alia*:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

I.R.C.P. 15(b). "The requirement that the unpleaded issues be tried by at least the implied consent of the parties assures that the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument." *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). "The determination whether an issue has been tried with the consent of the parties is within the trial court's discretion, and such determination

16

will only be reversed when that discretion has been abused." *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002).

Vreeken argues that his counsel moved to amend the pleadings to add a claim for breach of fiduciary duty through the following language: "Prior to resting, we'd simply make a motion to conform the pleadings to the evidence presented." Vreeken further asserts that the district court granted their motion by responding as follows: "Thank you. All right. That completes the evidentiary portion of the trial."

Without a specific motion indicating what cause of action is to be added and evidence in the trial record supporting the amendment, the trial court cannot make a reasoned analysis to guide its discretionary act. Nor does this Court have grounds upon which to review the trial court's discretionary decision. Therefore, we hold that the district court was not required to make any findings as to whether the Golds breached their fiduciary duty to Vreeken.

## 2. The District Court's Evidentiary Rulings

Next, Vreeken assigns error to some of the district court's evidentiary rulings. Specifically, Vreeken argues that the district court abused its discretion by excluding certain documentary evidence before trial, and by admitting Thomas Gold's testimony regarding his telephone conversation with Christianne under I.R.E. 801(d)(2)(D). We hold that the district court did not abuse its discretion in making these evidentiary rulings.

### a. *Standard of Review*

"This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000). These include challenges to a trial court's decision to admit or exclude documentary and/or testimonial evidence. "Error is disregarded unless the ruling is a manifest abuse of the trial court's discretion and affects a substantial right of the party." *Id.* at 51, 995 P.2d at 821. To determine if there has been an abuse of discretion, this Court applies the following three factors: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *City of McCall v. Seubert*, 142 Idaho 580, 586, 130 P.3d 1118, 1124 (2006).

b. *The district court did not abuse its discretion in excluding certain documentary evidence before trial.*

Vreeken argues that the district court abused its discretion in excluding certain documentary evidence before trial, specifically, the written lease agreement for an item of disputed equipment. Vreeken disclosed this documentary evidence five days before trial, which violated the district court's pre-trial order that each party's list of proposed exhibits be submitted no later than fourteen days before trial. Vreeken claims he did not submit these documents earlier because he was unaware of their importance until the months leading up to trial. However, this excuse does not justify the late disclosure. Vreeken was notified approximately one year in advance of the fourteen day deadline for exhibits. As the district court noted, "This case ha[d] been pending nearly six years. There [was] plenty of opportunity to dig out this material and get it submitted timely in discovery and have it be part of the ongoing case. It's simply not excusable to [reveal this evidence] the week before trial and [have it be] included in a late filed exhibit list without [the evidence] being disclosed as part of the normal discovery procedure." We hold the district court did not abuse its discretion in excluding the documentary evidence as being untimely.

c. *The district court did not abuse its discretion by admitting Thomas Gold's testimony regarding a telephone conversation he had with Christianne under I.R.E. 801(d)(2)(D).*

Vreeken also asserts that the district court erred by admitting hearsay evidence that the court determined was supportive of the finding that Christianne was Vreeken's agent. During trial, Thomas Gold testified that Christianne disclosed to him over the phone that the funds used to procure her assignment from the Bank of Idaho were from her father, she had only done what her father told her to do regarding the assignment, and she did not want any part of the transaction. Vreeken objected to this testimony. The district court determined these statements fell under I.R.E. 801(d)(2)(D) as statements made by a party's agent concerning a matter within the scope of an agency made during the existence of the relationship, and accordingly admitted the testimony as non-hearsay. On appeal, Vreeken argues that there is no independent evidence in the record indicating that Christianne was Vreeken's agent.

Under Idaho Rule of Evidence 802, hearsay is generally not admissible. However, I.R.E. 801(d)(2)(D) provides that a statement is not hearsay if it is "offered against a party and is . . . a statement by a party's agent or servant concerning a matter within the scope of the agency or

employment of the servant or agent, made during the existence of the relationship." The Idaho Court of Appeals has held that a foundational requirement of this rule is that "independent evidence of the agency relationship, i.e., evidence apart from the alleged agent's own statements, are necessary before the alleged agent's out-of-court declarations may be admitted." *R Homes Corp. v. Herr*, 142 Idaho 87, 92, 123 P.3d 720, 725 (Ct. App. 2005). This holding was based on precedent developed prior to the adoption of the Idaho Rules of Evidence, in which the Court determined that independent evidence of an agency relationship is required. *Id.*

We find that the record in this case contains independent evidence of an agency relationship between Christianne and Vreeken. During his previously published deposition, Vreeken testified that Christianne helped him manage Lockwood, thereby acting as his agent in the day-to-day function of the company. Vreeken also stated that he asked Christianne to pay off the Bank of Idaho loan with the money he gave her. Based on this evidence, we find that the district court did not abuse its discretion in determining that Christianne was acting as an agent at the time of the transfer, and that her comments to Thomas Gold concerning the transfer were admissible as a statement by a party's agent under I.R.E. 801(d)(2)(D). As such, we affirm the district court's ruling to admit Thomas Gold's testimony under I.R.E. 801(d)(2)(D).

### 3. The District Court's Findings of Fact

Finally, Vreeken argues that some of the district court's findings of fact are not supported by substantial, competent evidence. These include findings that: (1) Vreeken engaged in wrongful conduct by filing UCC statements against LP and LPI's assets, and by orchestrating Christianne's procurement of the Bank of Idaho's interest in the LPI loan; (2) certain LPI assets that Vreeken purchased were capital contributions; and (3) Christianne's assignment from the Bank of Idaho was void. We hold that these findings are supported by substantial, competent evidence and, therefore, we affirm.

#### a. *Standard of Review*

When reviewing a trial court's conclusions following a bench trial, our review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings support the conclusions of law. *Borah v. McCandless*, 147 Idaho 73, __, 205 P.3d 1209, 1213 (2009). "Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered." *Id.* These findings of fact will not be set aside

19

unless the trial court's findings are clearly erroneous. *Ransom v. Topaz Mktg., L.P.,* 143 Idaho 641, 643, 152 P.3d 2, 4 (2006). "If the trial court based its findings on substantial evidence, even if the evidence is conflicting, this Court will not overturn those findings on appeal." *Borah*, 147 Idaho at __, 205 P.3d at 1213. Furthermore, this Court will not substitute its view of the facts for that of the trial court. *Ransom*, 143 Idaho at 643, 152 P.3d at 4. However, we exercise free review over matters of law. *Borah*, 147 Idaho at __, 205 P.3d at 1213.

           i.  The district court's findings that Vreeken engaged in wrongful conduct by filing UCC statements against LP and LPI's assets and by orchestrating Christianne's procurement of the Bank of Idaho's interest in the LPI loan are supported by substantial, competent evidence.

           1.  *Vreeken's UCC filings*

First, Vreeken argues that the district court erred by finding that he engaged in wrongful conduct by filing UCC financing statements in Idaho against LP and LPI's assets. After trial, the district court found that Vreeken knowingly filed UCC financing statements for Gergbroeders and Lockwood in an attempt to create security interests in the assets of LP and LPI superior to those held by the Golds. The district court found that Vreeken's intent in filing the financing statements was to interfere with the Golds' ability to act on those assets as security for the debt owed to them under the MOU. Based in part on these improper UCC filings, the court found that Vreeken had breached the implied covenant of good faith and fair dealing under the MOU and, therefore, was jointly and severally liable with Lockwood, LP, and, LPI on the payout notes.[4]

Vreeken assigns error to the district court's finding for two reasons. First, Vreeken argues that he testified at trial that he did not know what UCC security interests were or how they operated and accordingly his conduct in connection with the UCC filings was not wrongful. However, Vreeken only testified that he did not know what the acronym UCC meant, and that he relied on counsel's advice in signing the UCC statements. The district court determined that Vreeken's primary intent in filing the UCC statements was to interfere with the Golds' ability to act on the assets securing the debt owed to them. It is the province of the trial court to judge the credibility of witnesses, and this Court will liberally construe the trial court's findings of fact in

---

[4] The district court determined that pursuant to *Community Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964, 975-76 (Mass. App. Ct. 1998), an individual with control over an entity can be held personally responsible for those obligations for which he deliberately causes the entity to fail to comply with. Accordingly, the

favor of the judgment entered. *Rowley v. Fuhrman,* 133 Idaho 105, 107, 982 P.2d 940, 942 (1999). The evidence demonstrates that Vreeken owns and manages multiple companies and is a sophisticated businessman. Based on his business experience, the district court must have implicitly determined that Vreeken knew what he was doing when he filed the UCC statements, despite his Dutch background. Because this finding is not clearly erroneous, it will not be set aside. *Ransom v. Topaz Mktg., L.P.,* 143 Idaho 641, 643, 152 P.3d 2, 4 (2006).

In addition, Vreeken asserts that because his counsel made the UCC filings, and not him, Vreeken's limited part in connection with the filings was not wrongful. However, it is generally accepted that the relationship between an attorney and client is one of agency in which the client is the principal and the attorney is the agent. *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004); *Burt v. Gahan*, 220 N.E.2d 817, 818 (Mass. 1966) (noting that, in a broad sense, counsel may be an agent and his client a principal). An agent may bind a principal if the agent has actual authority or apparent authority. *See Caballero*, 140 Idaho at 332, 92 P.3d at 1079. "Actual authority is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent." *Id.* Here, Vreeken's counsel was his agent. By signing the documents, Vreeken gave counsel the express authority to file the UCC statements. As a result, Vreeken is bound by counsel's actions.

Based on the evidence in the record, we hold that the district court's finding that Vreeken engaged in wrongful conduct by filing UCC statements with security interests senior to the Golds' statements is supported by substantial, competent evidence. Accordingly, we affirm this finding.

> 2. *Vreeken's part in the Bank of Idaho's assignment of the LPI loan constituted wrongful conduct.*

Vreeken also argues that the district court erred by finding that his part in Christianne's procurement of the Bank of Idaho's interest in the LPI loan constituted wrongful conduct. Vreeken argues the assignment of interest from the Bank of Idaho to Christianne was merely an "arms-length transaction," and that Vreeken advanced Christianne the funds in order to balance out gifts amongst his children. However, the evidence in the record demonstrates otherwise.

---

district court attributed liability to Vreeken based on the UCC statements he filed on behalf of Gergbroeders and Lockwood.

First, Vreeken testified during his deposition that he provided Christianne with the funds used to pay off LPI's Bank of Idaho loan and that he asked her to apply the funds toward procuring an assignment of the bank's interest. In addition, Melanie Harris, a former controller for LPI, testified that: (1) the transfer of assets from LPI to Telford, Christianne's company, was for Christianne's satisfaction of the Bank of Idaho loan; (2) any outstanding obligations due from LPI to Gergbroeders or Lockwood were not reduced on LPI's books as a result of the transfer; (3) the assets transferred constituted virtually all of LPI's capital assets with value and the transfer consequently reduced LPI's balance sheet to zero; (4) all the assets transferred were shown on LPI's books and records as assets owned by LPI, and (5) the amount due on the Bank of Idaho debt was reduced on LPI's books. Ms. Harris also testified that all of her discussions involving Telford, with respect to the assets transfer and the ongoing business operations of the company, were with Vreeken. Lorna Schubert, a former employee of LPI who also testified during trial, verified that the asset transfer was conducted in the manner described by Ms. Harris. Furthermore, Thomas Gold testified that Christianne admitted to him during a phone conversation that when she purchased the Bank of Idaho debt, the money was from her father, she signed the documents without knowing what they were because her father told her to, and she did not want any part of the transaction. Therefore, we find that there is substantial, competent evidence to support the district court's finding that Vreeken's part in procuring Christianne's assignment of the Bank of Idaho's interest in the LPI loan constituted wrongful conduct. As such, we affirm the district court's finding.

> ii. The district court's finding that certain assets of LPI, which were originally purchased by Vreeken, constituted capital contributions is supported by substantial, competent evidence.

Next, Vreeken argues that the district court erred by finding that certain LPI assets, which were originally purchased by Vreeken, constituted capital contributions. These assets were listed in Plaintiffs' Exhibit 3, which was an invoice documenting the value of the assets transferred from LPI to Telford. Instead, Vreeken asserts that the equipment listed in the invoice was provided to LPI as loans or leases. In support of his assertion, Vreeken directs this Court's attention to the following evidence or lack thereof: (1) Vreeken testified that he did not intend for the purchases to be capital contributions, and his testimony was corroborated by others; (2) LPI had been in operation for several years prior to the purchase of the equipment and there was no

22

evidence that LPI was in need of capitalization; and (3) Lockwood received no value for the "capital contributions."

The respondents, however, argue that there is substantial, competent evidence in the record to support the district court's finding, namely: (1) William Windels's testimony that all the machinery and equipment on site at LPI was owned by LPI; (2) testimony from Melanie Harris and Lorna Schubert that the assets belonged to LPI prior to them being transferred to Telford, (3) Thomas Gold's testimony that the financial statements he received reflected that LPI had substantial assets in equipment, (4) the documents transferring the assets from LPI to Telford, (5) EIEDC's UCC statements describing LPI's equipment, and (6) Vreeken's UCC statements describing specific LP and LPI equipment.

We hold that the district court's finding that LPI's assets were capital contributions is supported by substantial, competent evidence. These assets were listed on LPI's books as being owned by LPI, *see Lettunich v. Lettunich*, 141 Idaho 425, 433, 111 P.3d 110, 118 (2005); and were also used by LPI in the course of its normal business operations. *See Weyerhaeuser Co. v. Clark's Material Supply Co.*, 90 Idaho 455, 461, 413 P.2d 180, 183 (1966). LPI sold the assets to Telford, thereby acting as the owner. Furthermore, there was no substantial evidence presented at trial to indicate that Vreeken intended to lease the assets to LPI. *See Lettunich*, 141 Idaho at 432, 111 P.3d at 117; *Weyerhaeuser*, 90 Idaho at 461, 413 P.2d at 183. Most notably, there is no lease agreement or evidence of lease payments in the record. Therefore, we affirm the court's finding of fact that certain LPI's assets originally purchased by Vreeken were capital contributions.

### iii. The district court did not find that the Bank of Idaho's assignment to Christianne was void.

Lastly, Vreeken assigns error to the district court's finding that the Bank of Idaho's assignment of its interest in the LPI loan to Christianne was void. Vreeken claims the district court made this finding in its order after trial. However, the district court never determined that the assignment was void. Rather, in regard to the assignment, the district court found as follows:

> Vreeken used his daughter, Christianne, through her apparently dummy corporation, Telford Co., to purchase the Bank of Idaho debt and to take possession of the assets of [LP] and [LPI] in an intentional attempt to circumvent the Golds' rightful security interest in those assets. The following sale of those assets to Volm Bag, Co. was done in furtherance of this attempt and the Golds' not receiving any money from the proceeds of that sale serves as evidence that the alienation of the [LPI] assets to Telford did, in fact, impair those assets as security

23

of the debt to the Golds. The assets are now all tied up in litigation as a direct result of these various claims.

Nowhere in its finding did the district court state that the assignment from the Bank of Idaho to Christianne was void. Rather, the district court focused its attention on Vreeken's part in Christianne's procurement of the assignment and his motive for helping her. "To raise an issue on appeal, the record must contain an adverse ruling to form the basis for assignment of error and this Court will not consider or review an issue raised for the first time on appeal." *Magnuson Props. P'ship v. City of Coeur d'Alene*, 138 Idaho 166, 170, 59 P.3d 971, 975 (2002). Because the district court never found that the assignment was void, we therefore dismiss Vreeken's argument on appeal.

Accordingly, we affirm the district court's judgment after trial. Under this judgment, the district court determined that Vreeken had hindered LP and LPI's ability to satisfy the payout notes by interfering with the disposition of the assets intended to secure the payout notes. The court found that Vreeken breached the implied covenant of good faith and fair dealing and was personally liable to the Golds for the damages resulting from that breach. Likewise, section 2(c) of the MOU provided that any damages the Golds incurred as a result of Vreeken, Lockwood, LP, and LPI's failure to obtain the releases from the EIEDC and Citizens Bank loans were secured by the assets of LP and LPI. Based on the district court's judgment, Vreeken would be personally liable for these damages as well. Thus, even though we are reversing the district court on the issue of indemnification, we direct the court to determine on remand the amount of damages the Golds sustained from Vreeken's interference with the disposition of LP and LPI's assets intended to secure their releases from the bank loans, and to enter judgment against Vreeken for these damage amounts.

### D. Attorney Fees on Appeal

The appellants collectively request attorney fees on appeal under I.C. § 12-120(3). Idaho Code § 12-120(3) provides for an award of attorney fees to the prevailing party in a commercial transaction. None of the appellants are prevailing parties and, therefore, are not entitled to attorney fees on appeal.

The respondents request attorney fees on appeal pursuant to I.C. §§ 12-120(3) and 12-123. Idaho Code § 12-120(3) allows for an award of attorney fees to the prevailing party "[i]n any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, . . . and in any commercial transaction." "A 'commercial transaction' is defined as any

transaction, except transactions for personal household purposes." *Cramer v. Slater*, 146 Idaho 868, 881, 204 P.3d 508, 521 (2009). This appeal arises from a dispute over the parties' respective rights upon termination of a joint venture, which falls under the definition of a "commercial transaction." Furthermore, we find that the respondents are the prevailing party on appeal. Although we reversed the district court's award of summary judgment on the respondents' indemnification claim, the respondents prevailed on the appellants' eleven remaining claims on appeal. Therefore, the respondents, as the prevailing parties in this matter, are entitled to an award of attorney fees on appeal under I.C. § 12-120(3). As such, there is no need for us to consider the respondents' claim for fees under I.C. § 12-123.

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's award of summary judgment against LP and LPI's counterclaims and the court's award of summary judgment in favor of the respondents' cross-claim for breach of contract. Although we reverse the district court's award of summary judgment on the Golds' cross-claim for indemnification, we instruct the district court on remand to determine the amount of damages the Golds' sustained from Vreeken's interference with the disposition of the assets intended to secure the Golds' releases from the EIEDC and Citizens Bank loans, and to hold Vreeken personally liable for these amounts. As the prevailing parties on appeal, we award the respondents attorney fees under I.C. § 12-120(3). Costs to the respondents.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**