551 P.2d 610

Jesse N. PEAVEY and Cary W. Holsapple, doing business as JNP Cattle Co., a partnership, Plaintiffs-Respondents,

v.

Albert PELLANDINI, Jr., Individually, et al., Defendants-Appellants.

No. 11962.

Supreme Court of Idaho.

July 2, 1976.

Ronald P. Rainey, of Alexanderson, Davis, Rainey & Whitney, Caldwell, John M. Kappos, Stockton, Cal., for defendants-appellants.

Wayne P. Fuller, of Brauner, Fuller, Doolittle & Radke, Caldwell, for plaintiffs-respondents.

BISTLINE, Justice.

Plaintiffs-respondents, Jesse N. Peavey and Cary W. Holsapple, doing business as

JNP Cattle Co., a partnership, (hereinafter JNP) brought this action against defendants-appellants, Albert Pellandini, Jr., individually, and Robert Pellandini, individually, and Pellandini Cattle Co., a partnership (hereinafter Pellandini) to recover monies allegedly due for feeding and caring for approximately 900 head of Pellandini cattle for approximately 60 days in early 1973. The claims of JNP totalled $13,954.43, without specifying whether based on an express or implied contract, or whether written or oral.

Pellandini in their answer and counterclaim alleged that the feeding-caring agreement was oral and that it was at the rate of 25¢ per pound gained (with a promise of a minimum per day gain of one pound), and actual cost of medications. Pellandini also alleged that this weight-gain promise was not fulfilled because of the failure of JNP to "properly otherwise care for said cattle." Pellandini further alleged that the total weight gain was 30,211 pounds, "when in fact it should have been much higher," without specifying how much higher.

Pellandini claimed unspecified damages from JNP for failure to gain the one-pound minimum. A second damages claim was for $3,150.00, allegedly due by the failure of JNP to castrate 50 bull calves, predicated upon an allegation that JNP had orally agreed to do so, and that Pellandini suffered a loss occasioned by the difference per pound in selling young bulls as against selling young steers.

In discovery proceedings, JNP contended that the agreement was entirely oral, and that it was based on compensation at the rate of 8¢ per day per head plus actual costs of feed and medicine.

The trial court instructed the jury on both versions of the oral agreement for feeding the cattle, and also instructed that, should the jury find no meeting of the minds, JNP could recover the reasonable value of what JNP rendered to Pellandini, and Pellandini received from JNP by JNP feeding, caring for and supplying medicines to Pellandini cattle.

The jury was also instructed to not consider reasonable value evidence if the jury found an express contract had been entered into. The jury was further instructed on the claim of Pellandini based on the failure to castrate.

On one verdict the jury found that JNP was not liable on the castration claim. On the other verdict the jury found for JNP on an implied contract in the sum of $12,236.12, and deducting a payment made and received in the sum of $3,000.00, awarded JNP the net sum of $9,236.12.

Judgment being entered, Pellandini moved for a new trial, and judgment N.O. V., primarily challenging the admission of evidence, the giving of instructions on quantum meruit, and the sufficiency of the evidence to support the verdict. The motions were denied. Appeal is taken from the final judgment and from the order denying the postjudgment motions.

Pellandini makes germane assignments of error as follows:

1. That the trial court should not have instructed nor received evidence on quantum meruit, or otherwise put—that the jury was obligated to find an express contract, either as contended for by JNP, or as contended for by Pellandini, or, inferentially, to find in favor of neither party.

2. Evidence of JNP to support a quantum meruit theory should not have been allowed by reason of failure to have pleaded it.

3. The formula for recovery on a quantum meruit basis is inaccurate. Pellandini challenges the quantum meruit instruction as given, and contends that reasonable value is to be applied only to the actual benefit conferred upon Pellandini.

4. The trial court should not have allowed into evidence proof of JNP costs of feeding "where there was no documentation at all, and no evidence of any

ending inventory and some of the invoices were totally missing."

5. The court's refusal to admit certain Pellandini rebuttal evidence bearing on reasonable value.

6. The jury verdict is excessive in that it accepts the actual cost figures of JNP, which, say Pellandini, exceeds JNP's express contract claim of cost plus 8¢ and exceeds reasonable value.

## 1. JURY COULD FIND IMPLIED IN FACT CONTRACT WHERE NO EXPRESS CONTRACT EXISTED.

In *Continental Forest Prod., Inc. v. Chandler Sup. Co.*, 95 Idaho 739, 518 P.2d 1201 (1974), this Court identified and defined three types of contractual arrangements:

"First is

the express contract wherein the parties expressly agree regarding a transaction. *Alexander v. O'Neil,* 77 Ariz. 316, 267 P.2d 730 (1954)."

"Secondly,

there is the implied in fact contract wherein there is no express agreement but the conduct of the parties implies an agreement from which an obligation in contract exists. *Clements v. Jungert,* 90 Idaho 143, 408 P.2d 810 (1965).

"The third category is

called an implied in law contract, or quasi contract. However, a contract implied in law is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases in spite of an agreement between the parties. *Hixon v. Allphin,* 76 Idaho 327, 281 P.2d 1042 (1955); *McShane v. Quillin,* 47 Idaho 542, 277 P. 554 (1929); 3 Corbin on Contracts, § 561, at p. 276 (1960). It is a non-contractual obligation that is to be treated procedurally *as if* it were a contract, and is often referred to as quasi contract, unjust enrichment, implied in law contract or res-

titution." (Emphasis in original) *Id.* at 743, 518 P.2d at 1205.

■ Pellandini argues that the trial court erroneously allowed JNP to inject during the trial a theory of recovery based upon the *third category.* It is seen from a review of the record that the trial court did not do so, but rather did allow JNP to introduce evidence, and go to the jury with instructions on a theory of implied in fact contract.

It is clear that the trial court was correct in so doing. Otherwise, to adopt the contention of Pellandini, the trial court would have refused evidence in support of a quantum meruit count, and, had the jury found "no express contract," as it apparently did, JNP would go unheard and uncompensated after having fed and cared for 900 head of Pellandini's cattle for two months.

## 2. FAILURE TO PLEAD QUANTUM MERUIT.

■ While it is true that a quantum meruit count was not specifically pleaded by JNP, it was obvious to the parties prior to trial that they were in *total* disagreement as to the terms of any express agreement. This was to the extent that Pellandini could reasonably have anticipated that a jury might not find any agreement as contended for by either party.

Moreover, when the trial court determined to allow JNP to pursue a quantum meruit theory, although Pellandini objected, on the basis of it being an unpleaded count, Pellandini did not demonstrate any prejudice, and no request for a continuance was made.

Further supporting the trial court on this point is the statement from 66 Am.Jur.2d, Restitution and Implied Contracts, § 160 at 1091–1092 (1973):

" .. . . under the modern practice it is generally held that a complaint or petition seeking to recover upon an express contract may be amended so as to ask for and permit recovery on a quantum

meruit; and under Federal Rules of Civil Procedure 8 and 54, and similar state statutes or rules of procedure, recovery has been allowed in some cases on quantum meruit where only an express contract was pleaded."

### 3. FORMULA ·FOR RECOVERY ON QUANTUM MERUIT.

Pellandini argues strongly that the formula given by the trial court to the jury for a quantum meruit recovery was incorrect. Pellandini contends that the measure of reasonable value is to be applied to the benefit done for the recipient, here Pellandini, and that the instruction which was given allowed the jury to let JNP recover the reasonable value of what it did, "regardless of benefit" to Pellandini.

In support of this contention Pellandini quotes this excerpt from 66 Am.Jur.2d, Restitution and Implied Contracts, § 28 at 973:

"The measure of recovery for services furnished or goods received under the doctrine of unjust enrichment, *as distinguished* from the doctrine of *contracts implied in fact,* is the value of the actual benefit realized and retained." (Emphasis added)

Following this excerpt, and omitted in the Pellandini brief, the text goes on to add:

"If there is no special agreement as to the amount of compensation and the services are not intended to be gratuitous, *the law implies a promise by the employer to pay what services reasonably are worth, which is determined largely by the nature of the work and the customary rate of pay for such work in the community and at the time the work was performed.* These are matters for the jury to determine, under proper evidence and instructions." (Emphasis added)

Pellandini further quotes an excerpt from an editorial comment found in the Restatement of the Law on Restitution, § 107 at 449 (1936). The excerpt points to a distinction between an action based upon a promise, whether it be express or implied

in fact, and an action based upon unjust enrichment. While Pellandini cites the excerpt as support for their contention that the measure of recovery should have been predicated on value of benefit to recipient, they seemingly ignore the proposition that the relief allowed here was not in restitution, but in quantum meruit, predicated upon the implied in fact promise to pay which the law supplies from the conduct of the parties.

The actual statement of the law at page 448, being subsection (2) of § 107 is:

"In the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services for him or to transfer property to him thereby bargains to pay therefor."

The excerpt relied upon by Pellandini is a comment to subsection (1) of § 107 and not pertinent to the issue here.

Comment to subsection (2) of § 107 is helpful, which reads in part as applicable:

". . . [T]he conduct and words of the parties are interpreted in the light of ordinary usages and it is the ordinary understanding that a person who asks another to do something for him or to transfer something to him will pay for it unless the circumstances under which the request is made indicate otherwise."

Pellandini, in excerpting a quote in Williston on Contracts, from the case of *Gillis v. Cobe,* 177 Mass. 584, 59 N.E. 455 (1901), further urge their contention that actual benefit to the recipient is the proper measure. Unfortunately, neither the case nor Williston support Pellandini.

The case and section of Williston relied upon are concerned with those situations where there is a contract, but such a failure upon the part of the plaintiff to perform that, contractually, ". . . he is entirely out of court, yet it is not fair that the defendant should go out of the transaction as a whole with a profit at his, the plaintiffs' expense . . ." 12 Williston on Contracts, § 1482 at 296–297 (3rd Ed.

**660**

Jaeger 1970). The measure of recovery in quantum meruit is not discussed.

To enlighten we call attention to *Nelson v. Hazel,* 91 Idaho 850, 433 P.2d 120 (1967), which was an unjust enrichment building contract case brought by a negligent builder. The legal propositions urged by Pellandini are appropriate to, and were applied in that case, but are not applicable here, where the jury did not find the agreement to have been made as contended by Pellandini, nor breached by JNP.

It may also be helpful to point to a statement in 12 Williston on Contracts, § 1480 at 280–282, where the text speaks of the confusion between quasi-contractual obligations and "actual" contracts. The text is in accord with the definitions of this Court in *Continental Forest, supra,* set forth above, and speaks of "actual" contracts as being,

". . . those where there is a real promise, whether express or implied in fact, to pay the reasonable value of goods or services."

"In such cases and on a fair interpretation of the parties' contract, if there is a market value for what the plaintiff is requested to furnish, that value is the measure of the promised price; if there is no market price, the measure is at least the cost or worth from the plaintiff's standpoint, *not limited by the fact that the value of the benefit which accrues to the defendant, is a less sum.*" (Emphasis added)

In 66 Am.Jur.2d, Restitution and Implied Contracts, § 166 at 1096, it is similarly stated, as to quantum meruit, that the measure of recovery "is the reasonable value of the goods or services furnished to the benefited defendant."

This Court in its consideration of Pellandini's argument on this issue must address itself to a statement in a recent opinion of ours, which, while not cited by either party, at first blush seems to support Pellandini's position. In *Dale's Service Company, Inc. v. Jones,* 96 Idaho 662, 666,

534 P.2d 1102, 1106 (1975), it was stated that:

"Under a quantum meruit theory, the proper measure for recovery is *the value of the actual benefit realized and retained by the recipient* of the services and material." (Emphasis added)

Closer inspection of the authority relied upon by the Court in enunciating that standard reveals that this statement was an incorrect pronouncement of the law.

In *Fairchild v. Mathews,* 91 Idaho 1, 415 P.2d 43 (1966), relied upon by this Court as authority for the above quoted proposition, the trial court had determined that there was no meeting of the minds of the contesting parties concerning the price to be paid for land leveling work. It therefore held the working claimant was entitled to receive the reasonable value of his services performed. The reasonable value was arrived at on the basis of the uncontradicted testimony of a disinterested third party, qualified in the field, who testified as to the reasonable hourly rate for the labor provided. In affirming, this Court stated, specifically not making *value* of benefit to the recipient the criteria:

"The lower court therefore had no alternative except to resolve this issue on the basis of quantum meruit, i. e., to allow the respondent the reasonable value of services performed upon appellant's land to appellant's benefit." *Id.* at 5, 415 P.2d at 47.

In *Weber v. Eastern Idaho Packing Corporation,* 94 Idaho 694, 496 P.2d 693 (1972), also cited as supporting authority in *Dale's Service, supra,* this Court commented:

"The facts of this case fit within the decisions of *Fairchild v. Mathews,* 91 Idaho 1, 415 P.2d 43 (1966) and *Guyman v. Anderson,* 75 Idaho 294, 271 P.2d 1020 (1954), where this Court allowed lien claimants to recover on the theory of quantum meruit for land leveling. The former case also concerned the failure of the parties to agree on the price to be

paid for land leveling work and held that the district court properly resolved the dispute by allowing the workman to recover the reasonable value of his services performed on the defendant's land which were to defendant's benefit. In that case as in the present record, there was uncontroverted testimony from an impartial witness familiar with leveling work describing the prevailing rates charged for similar work. In the present case, the rates charged by respondents were at the lower end of the rate scale for the area." *Id.* at 697, 496 P.2d at 696.

Again, the value of the benefit to the recipient of the services was not made the determinative factor in the recovery on a quantum meruit claim.

■ Prior to *Dale's Service* it is clear that Idaho was in accord with the majority rule; i.e., the measure of recovery on quantum meruit is the reasonable value of the service rendered to the benefited defendant, and not "the value of the actual benefit realized and retained by the recipient."

The above-quoted statement in *Dale's Service* was an inadvertence occasioned by the very confusion mentioned in Williston, and a momentary failure to distinguish quantum meruit recovery from recovery under theories of unjust enrichment, quasi-contractual, and implied-in-law. Accordingly, we now disavow it as an incorrect statement of the law, recognizing however, that it may have application in some types of quasi-contractual, unjust enrichment cases.

■ As thus viewed, it is noted that the trial court's instruction advised the jury that the services and material had to be received by Pellandini, provided by JNP, and the measure of any recovery would be determined as the reasonable value of what JNP rendered. There is no disputing that JNP did care for and feed Pelladini's calves for approximately 60 days. Both parties were given ample opportunity to present evidence touching on that issue.

## 4. ADMISSION INTO EVIDENCE OF PROOF OF JNP'S COSTS OF FEEDING.

It is contended by Pellandini that the jury verdict reflects a determination based upon the JNP exhibit which summarized, with attached checks and vouchers, an actual outlay by them to others of $12,661.19 for hay, corn-cobs, and related charges necessarily incurred in feeding the Pellandini cattle. Pellandini submits that, where the jury found "no express contract," and where these costs were introduced into evidence in connection with the JNP version of the oral agreement, it was somehow unfair to Pellandini that the jury might have considered such expenses of feeding in reaching its verdict. This argument is untenable.

■ On a quantum meruit theory, JNP was entitled to show, as part of its proof, the actual cost of the feed, leaving it to both parties to respectively show the reasonableness or unreasonableness of those costs. As noted in 66 Am.Jur.2d, Restitution and Implied Contracts, § 89 at 1031:

"Generally, in order to be entitled to recover the value of his services, the plaintiff must prove such value. Thus, evidence of the value of work or materials is ordinarily essential to a recovery under the common counts. In an action to recover the value of services rendered, any competent evidence which reasonably tends to establish such value is, of course, admissible. Evidence of what others received for like services may properly be considered. Proof of the value of services may also be shown by the opinion of witnesses who are familiar with the value of such services, including, it is generally held, the opinion of the person who performed the services."

As defensive matter, the following section, (§ 90) has this statement: "Where, in an

**662**

action to recover for the reasonable worth of services rendered, the charge made therefor is contested as exorbitant and excessive, their value is a question for the jury."

Further support for our conclusion is found in the case of *Evans v. Mason,* 82 Ariz. 40, 308 P.2d 245 (1957). In that quantum meruit services case, the Arizona Supreme Court held that a plaintiff, to make a prima facie case, is required to prove performance and reasonable value, and that defenses available against such an action include showing that the services were not in fact furnished, and were not of value claimed—and that the measure of recovery is the actual value of services rendered.

## 5. REFUSAL TO ADMIT PELLANDINI REBUTTAL EVIDENCE.

Close examination of the record reveals that the trial court did not preclude Pellandini from introducing any competent evidence. While Pellandini specifically complains that their witness Rowher was not allowed to testify as to what he knew about the computation of actual costs at the Shota feed yard, (which the trial court properly ruled out as collateral), the same witness was allowed to testify to the then going rate for feeding in that area at that time, which he attuned to pound gain (in keeping with Pellandini's contention in that they were so promised). His answer was that it would be between 22¢ to probably 38¢.

## 6. JURY VERDICT NOT EXCESSIVE.

Pellandini submits that the jury verdict was excessive. With this contention we cannot agree. The jury was at liberty to decide from competent evidence presented by both sides the reasonable value of the services rendered and materials provided. A review of the record convinces us that the verdict returned was within the realm of evidence presented at trial, and accordingly it will be affirmed. *Curzon v. Wells Cargo, Inc.,* 86 Idaho 38, 45, 382 P.2d 906, 909 (1963); *Fairchild v. Mathews, supra.*

The jury returned a verdict in favor of JNP in the amount of $12,236.12, minus a credit of $3,000.00 which had already been received by JNP from Pellandini. This verdict was less than the figure contained in the JNP exhibit which was introduced to demonstrate JNP's costs in the transaction. This verdict was also consistent with the evidence submitted by Pellandini through the witness Rowher. Twenty two cents per day, times 54,000 head-days, plus something for medicine gives nearly the same figure as the JNP cost of feed evidence.

The parties did not invest in a written agreement. Pellandini stated that both sides lost money, Pellandini on its claim, not accepted by the jury, of a promised one-pound a day weight gain. However, when the cattle were returned to Pellandini, while the one-pound weight gain was not there, Robert Pellandini testified that "they looked healthy and the condition was fine," and "the cattle were healthy and they looked all right."

No error is shown, and the judgment affirmed.

Costs to JNP.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, District Judge (retired), concur.